IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

SHEBAH T. CARFAGNA,                     CASE NO. _____

          Plaintiff,

   v.

FISHER ISLAND CLUB, INC.,

          Defendant.

_____/

## COMPLAINT

Plaintiff Shebah T. Carfagna ("Carfagna"), for her Complaint against Defendant Fisher Island Club, Inc. (the "Club"), alleges as follows:

### Preliminary Statement

1.     This action arises out of the Club's orchestrated and malicious campaign of harassment and racial and age discrimination against Carfagna, the only black female fitness trainer at the Club.  Over the past few years, the Club -- through certain of its employees and representatives -- targeted Carfagna on the basis of her race and her age (she currently is 68 years old), and engaged in number of discriminatory actions designed to deprive her of the ability to conduct her business and fulfill her obligations to the Club and her clients.

2.     Specifically, the Club deprived Carfagna of the resources needed to service her existing and potential clients, fraudulently diverted existing and potential clients away from Carfagna -- and directed them to other trainers -- by misrepresenting her availability and defaming her to others, wrongfully withheld compensation owed to Carfagna, prohibited Carfagna from providing services to clients that the Club expressly permits its Caucasian trainers to provide, and harassed and intimidated Carfagna, creating an extremely hostile environment for her at the Club.  None of the Club's Caucasian trainers were treated in this manner.  Indeed, the

Club's spa director admitted that that the Club treated Carfagna differently than the Club's other trainers, when she admonished the Club's locker room attendant for permitting Carfagna to enter the women's locker room: "None of the trainers are supposed to be in the locker room, *especially Shebah Carfagna*."

3.      When Carfagna attempted to discuss these issues with the Club's management, the Club lured her to a meeting under the guise of discussing her complaints about these issues, and then brazenly -- and illegally -- retaliated against her by terminating her employment at the meeting.  That the Club's retaliatory termination was entirely pretextual is confirmed by the reasons the Club provided for her termination:  alleged complaints about Carfagna's personality from the very Club personnel committing the misconduct discussed herein, and Carfagna's provision of virtual classes to certain of her clients, rather than on Club premises.

4.      The Club's purported reasons for terminating Carfagna's employment are entirely contrived.  The Club's complaints about Carfagna's personality are not credible given the lack of similar complaints over the prior 14 years (and the general esteem in which Carfagna is held by the Club's members).  But it is the Club's assertion concerning Carfagna's virtual classes that is particularly disingenuous.  As the Club is well-aware, many of the Club's other personal trainers -- who are not members of Carfagna's protected classes -- provide direct, private Zoom classes and other off-premises services to members as well.  Even worse, one of the members who takes Carfagna's virtual class is *the wife of a member of the Club's Board of Directors*, and those classes are *paid for by that Board member*.  That the Club would terminate Carfagna based on conduct in which its other trainers engage, and which was affirmatively solicited by a Club Board member, is -- to be generous -- incredible, and it confirms the Club's malicious and

discriminatory motive.  The Club did not terminate Carfagna for the stated reasons; it terminated her because she is a black woman in her late sixties who objected to her mistreatment.

5.      After the Club terminated Carfagna, a number of the Club's members sent emails to the Club expressing their support for Carfagna, their anger at the Club's actions, and their desire that she be reinstated immediately.  The Club refused to do so.  And shortly thereafter, one of the Club's black employees approached Carfagna's life partner -- also a black trainer at the Club -- to complain about the Club's mistreatment of its other black employees, stating that the Club apparently "wants to lighten up the place."

6.      The Club's behavior in this regard is not only shameful, it is illegal.  The Club's discriminatory and retaliatory actions towards Carfagna have violated Carfagna's civil rights and have caused significant financial and reputational damages to Carfagna, along with severe emotional and physical distress.  Thus, by this action, Carfagna seeks to vindicate her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA"), and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.01, *et seq*. ("FCRA"), and to recover the damages caused by the Club's egregious misconduct.

<u>**Parties, Jurisdiction and Venue**</u>

7.      Plaintiff Carfagna is an individual residing in Miami-Dade County, Florida.

8.      Defendant Fisher Island Club is a not-for-profit corporation organized and existing under the laws of the State of Florida, with its principal place of business located in Fisher Island, Florida.

9.      This Court has federal-question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Carfagna's rights under the laws of the United States.  The Court has supplemental

3

jurisdiction pursuant to 28 U.S.C. 1367(a) over Carfagna's FCRA claims because they are so related to her federal claims that they form the same case or controversy.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Club resides in this District, and all of the conduct complained of herein occurred in this District.

## Administrative Procedures

11.     Carfagna has filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging facts constituting violations of Title VII, the ADEA, and the FCRA.  Carfagna's Title VII, ADEA, and FCRA charges arise out of the same factual allegations.  On September 16, 2025, Carfagna received a notice of right to sue from the EEOC.  Thus, Carfagna timely brings this action.

12.     Any and all prerequisites and conditions precedent to the filing of this lawsuit have been performed, excused, or waived.

## Factual Allegations

### A.  Carfagna's Retention by the Club.

13.     Carfagna, a 68-year old black woman, is a highly-respected health and wellness consultant with more than 20 years of experience.  She possesses certifications in a number of modalities, with a particular emphasis on longevity and anti-aging (a discipline that is highly sought after by the members of the Club and other residents of Fisher Island).

14.     Carfagna's professional reputation is well-established.  Among other things, Carfagna was selected as a preferred trainer and speaker by Age Bold, a leading digital fitness platform directed to adults over 55 years old.  Carfagna also is affiliated with, and has presented at, Livelong Summits, which are national conferences attended by leading scientists, researchers and entrepreneurs in the anti-aging and wellness fields.  Carfagna has developed a proprietary "Ageless Workout" method, and has published a book on Amazon, "Ageless Workout: A Guide

to Total Transformation, Mind, Body and Spirit". She circulates a newsletter that is distributed internationally, and she has appeared on numerous podcasts to address health and wellness as it relates to aging. Over the past two decades, Carfagna has provided her services to clients in the private and public sector, including, among others, clients from luxury domestic and international hotels, local universities, charitable and other non-profit institutions, and the performing arts.

15.     Carfagna's knowledge and expertise are particularly suited to the Club, its members and other residents of Fisher Island. Indeed, Fisher Island is an exclusive, private residential community that is home to some of the wealthiest people in the world, many of whom are elderly. Many of its residents -- and Club members -- are highly successful mid-to-late-career professionals and retirees who are avid consumers of the health, wellness and anti-aging services that Carfagna provides.

16.     To that end, in 2010, the Club retained Carfagna, through her solely-owned company Panache Trading Company (d/b/a Panache Fitness), to provide the Club's members with personal training services and with her considerable knowledge and expertise in the health, wellness and anti-aging fields (the "Contract").

17.     Although the Contract is titled "Independent Contractor Agreement," the economic and practical reality of the parties' relationship was that Carfagna was a *de facto* employee of the Club. Indeed, for more than a decade, Carfagna relied almost entirely on the services she provided to the Club for her income. She worked at the Club for 14 years, and during that time period, 70-95% of her annual revenues were generated by the services she provided to the Club (depending on the year). Over the past 5 years, 95% of her revenues were

generated by her services to the Club.  To that end, Carfagna worked at the Club full-time, spending 6-8 hours per day at the Club for 6 days during the week, or 36-48 hours per week.

18.      Moreover, the services provided by Carfagna were integral to the Club's business. The Club primarily offers services -- and generates revenues -- from its fitness classes, personal training sessions and massage services.  Given the importance of the fitness classes and personal training sessions to the Club's business, the Club ensured that it exercised near total control over the manner and means by which Carfagna and the Club's other trainers -- nearly half of whom were employees -- provided their services.  For example, Carfagna was only permitted to provide her training services to the Club's members, and was prohibited from providing her services to non-Club members.  The Club -- and not Carfagna -- set the schedule and timing for the 6 group fitness classes taught by Carfagna per week at the Club.  And the Club -- contrary to the terms of the Contract -- controlled and coordinated Carfagna's ability to schedule personal training sessions and the time and location of those sessions.  The Club also provided the equipment needed for Carfagna to provide her services, required Carfagna and the other trainers to attend mandatory training and certification classes, and prohibited them from providing their services if they did not attend.

19.      In short, the Club's business and profitability was dependent upon Carfagna's services, and the Club controlled nearly every aspect of those services.  In turn, Carfagna's ability to earn a living was almost entirely dependent upon the income she generated from providing services to the Club.  The Club therefore misclassified Carfagna as an independent contractor when she was, in fact, an employee at all relevant times.

**B.  The Club's Discrimination Against, And Disparate Treatment Of, Carfagna.**

20.     At the time of her retention, and throughout her 14 years working at the Club, Carfagna and her life partner -- who also works in health and wellness -- were the only black personal trainers working at the Club.

21.     During the first decade of her work for the Club and its members, Carfagna developed a loyal clientele at the Club and became highly respected and sought after by the Club's members and other Fisher Island residents.  For its part, the Club treated Carfagna with respect during most of those first 10 years, and provided her with the resources and support she needed to build her business on Fisher Island.

22.     In 2018, the Club's treatment of Carfagna changed drastically.  At that time, the Club hired a new spa director, Charlotte Prescott ("Prescott"), who -- along with the trainers, employees and other personnel she hired -- embarked upon a discriminatory course of conduct designed to cause significant harm to Carfagna by depriving her of the ability to train her existing clients and obtain new clients -- *i.e.,* the Club's members.

23.     For example, the Club began actively directing Club members away from Carfagna, and towards other trainers.  The Club did so by having its desk attendants and other employees falsely inform Club members who inquired about Carfagna's availability that Carfagna was unavailable, when in truth, she was available.  While the Club engaged in similar conduct with respect to Carfagna's partner, it did not treat any of the Caucasian trainers in this fashion.

24.     In addition, the Club wrongfully prevented Carfagna from teaching certain classes by falsely claiming that she was not certified or qualified to do so.  For example, in or about 2019, Prescott refused to permit Carfagna to teach classes on a particular stationary bicycle

equipment by falsely claiming that she was not certified to teach on such equipment, when, in fact, Carfagna was -- and is -- certified on that modality.  The Club did not treat any other Caucasian trainer in this fashion.

25.     Throughout 2020 and 2021, during the Covid-19 pandemic, the Club continued its discriminatory and disparate treatment of Carfagna.  Citing the Club's purported policy during the pandemic of prohibiting trainers from substituting for other trainers who cannot teach their classes, Prescott repeatedly refused to permit Carfagna to substitute for her partner when he was unavailable.  Prescott did so even though she often permitted other Caucasian trainers to substitute for trainers who became unavailable.

26.     In 2022, as the pandemic subsided and Club members returned to the Club for in-person classes and training sessions, the Club doubled down on its discriminatory efforts towards Carfagna.  For example, the Club increased the frequency of its efforts to direct Club members away from Carfagna, and towards other trainers.  While the Club engaged in similar conduct with respect to Carfagna's black life partner, it did not treat any Caucasian trainer in this fashion.

27.     To that end, in late 2022, Prescott was informed by Carfagna's partner via email that such practice was both fraudulent and discriminatory.  Prescott responded nearly a week later by offering lip service:  "We are reviewing your concerns internally and will circle back with you with a time that we can meet and review further."  Of course, neither Prescott nor the Club ever "circled back".  Instead, Carfagna was terminated a little more than a year later.

28.     Throughout 2022 and 2023, the Club also repeatedly deprived or limited Carfagna's access to the resources needed to service Club members.  The Club often advised Carfagna that she could not use a particular studio or piece of equipment for a class because that studio or equipment was supposedly reserved by another (Caucasian) trainer, even though

Carfagna had reserved the studio or equipment in advance in accordance with the Club's policy. The Club often would do so at the very last minute, right before Carfagna's class, in order to maximize the inconvenience to her client and place Carfagna in as negative a light as possible. The Club did not treat any Caucasian trainer in this fashion.

29.     In other instances, the Club continued its practice of preventing Carfagna from teaching certain classes by falsely claiming that she was not certified or qualified to do so.  For example, the Club refused to permit Carfagna to teach water aerobics and related classes by falsely claiming that she was not certified to teach such classes, when, in fact, Carfagna was -- and is -- certified on that modality.  Similarly, the Club refused to permit Carfagna to teach trampoline classes by, once again, falsely claiming she was not certified to do so, when, in fact, Carfagna is certified in that modality as well.  Once again, the Club did not treat any Caucasian trainer in this fashion.

30.     The Club also discriminated against Carfagna by intentionally and repeatedly withholding amounts rightfully earned by Carfagna.  Indeed, on multiple occasions in 2022 and 2023, the Club remitted amounts owed to Carfagna that were less than the full amount owed under the parties' agreement, and less than the amounts earned from Carfagna's services to the Club's members.  In each instance when Carfagna informed the Club about the underpayment, the Club explained that it had made a "mistake" in calculations.  Of course, the supposed "mistake" always resulted in an underpayment, and never an overpayment.  The Club did not treat any Caucasian trainer in this fashion.

31.     Not content to simply deprive Carfagna of the ability to obtain new clients among the Club's members, impede her ability to service her existing clients among the Club's members and withhold revenues from her, the Club had its employees -- in particular, Jordaniel

Demorizi ("Demorizi") and Holly Haag Sosa ("Sosa") -- work to harm Carfagna's reputation and standing with Club members and Club employees by defaming her to others and misrepresenting her skills and the popularity of her classes.

32.     In one instance in December 2023, Demorizi falsely reported to supervisor Jaime Anton ("Anton") -- who was hired by Prescott -- that Carfagna's class had only 1 attendee when, in truth, other Club members were in attendance.  When Carfagna complained about this incident, Anton excused Demorizi's behavior, and the Club terminated Carfagna a few months later.

33.     Demorizi also repeatedly served as the Club's "muscle" in creating a hostile and intimidating environment for Carfagna.  Demorizi -- who is physically imposing -- would often speak to Carfagna at close quarters and in a manner that was threatening in both tone and substance.  Carfagna repeatedly raised the issue with management to no avail.  For example, when Carfagna raised the issue with Anton in an email in late December 2023, Anton promised to speak with Demorizi and to "follow up" with Carfagna.  Of course, Anton never followed up, Demorizi's behavior did not change, and Carfagna was terminated a few months later.

34.     Another person who attempted to intimidate Carfagna was Cadizsh Norford ("Norford").  As with Demorizi's behavior, the Club ignored Carfagna's complaints about Norford's behavior.  For example, in November 2022, Carfagna emailed Prescott to inform her that Norford had engaged in "aggressive, belligerent and offensive" behavior towards Carfagna, which "frightened" her.  Prescott took no action in response to Carfagna's email.  The Club did not treat any Caucasian trainer in this fashion.

35.     Not all of the Club's employees worked in concert with the Club to discriminate against Carfagna.  Some refused.  Indeed, Prescott instructed Luis Milan ("Milan"), the Club's

10

fitness director, to target and isolate Carfagna by altering the class schedules to inconvenience her and her clients and to refrain from promoting her classes to other Club members.  But rather than implement the Club's instructions, Milan quit.

**C.  The Club Admits Its Discrimination Against Carfagna.**

36.     Prior to Carfagna's termination, the Club had announced a policy that trainers are not to use or pass through the Club's front door or locker room when members are present. Notwithstanding this announced policy, the Club continued to permit trainers to use the front door or enter the locker room after hours or when the Club is empty, and the Club's trainers and staff regularly did so.

37.     On one weekday afternoon in April 2024, Carfagna was outside in the Club's pool area when she thought that she had left her sunglasses in the office of the Club's Spa Director Elisabeth Rugani ("Rugani").  It was relatively late in the afternoon and no Club members were present.  Thus, Carfagna entered Rugani's office to retrieve her glasses, while Rugani was there. Carfagna informed Rugani that she thought she had left her glasses in Rugani's office, and proceeded to look for them, but they were not there.  Carfagna then left Rugani's office through the most convenient route to exit the Club, which was through the women's locker room.  For some reason, Rugani followed Carfagna into the locker room.  After Carfagna had left the locker room, Rugani turned to the locker room attendant, who was the only other person in the locker at the time, and stated:  "None of the trainers are supposed to be in the locker room, ***especially Shebah Carfagna***."  The attendant was shocked by Rugani's statement, and immediately left the locker room in tears.

**D.** **The Club's Retaliatory Termination Of Carfagna.**

38.     A couple of weeks later, on April 22, 2024, Carfagna was called to a meeting with the Club's General Counsel, Desiree M. Cuason, the Club's Vice-President of Operations, Kerem Kendigelen, and Rugani.  Carfagna was led to believe that the meeting was convened to discuss Carfagna's complaints about her discriminatory treatment.  Instead, Carfagna was informed that the Club was terminating her employment.  Carfagna was told that other trainers supposedly complained about her, two members supposedly complained that she was rude, and she supposedly violated Club policies by providing classes on Zoom to Club members without the Club's approval.  The Club reiterated these purported grounds for termination in an April 23, 2024 email.

39.     The Club's purported bases for terminating Carfagna are entirely contrived and pretextual.  The supposed complaints about Carfagna's personality -- made largely by those who discriminated against her -- are entirely inconsistent with the impeccable reputation Carfagna established over her prior 14 years at the Club and the esteem in which she is held by many of the Club's members.  Indeed, prior to the meeting at which she was terminated, Carfagna had not been advised of a single similar complaint during her tenure at the Club.

40.     But the Club's citation of Carfagna's virtual training classes as grounds for termination is even more disingenuous.  As an initial matter, the virtual classes that the Club claims violate its policies are, in fact, not Zoom classes.  They are group classes hosted on Panache Fitness's own application, available worldwide for download and use.  But more importantly, the Club knowingly allows many of its other (Caucasian) trainers to provide private classes and training to Club members by Zoom and offsite.

41.     Worse still, one of the clients who regularly attended Carfagna's virtual class is Susan Nydick, the wife of Robert Nydick, *a member of the Club's Board of Directors*.  Ms. Nydick's classes -- classes that supposedly were the basis for the Club's decision to fire Carfagna -- were *paid for by the Club's own director Mr. Nydick*.  That the Club would cite Carfagna's provision of classes that were paid for by one of the Club's Board members as grounds for her termination confirms that Carfagna's termination was retaliatory and discriminatory, and that the proffered reasons were pretextual.

### E.  The Club Members' Letter Campaign In Support of Carfagna.

42.     After Carfagna's retaliatory termination, many of the Club's members sent emails and letters to the Club to express their objection to Carfagna's treatment and to seek her reinstatement.  For example, one member wrote:

> I have just learned the disturbing news that Shebah was fired & no longer has any employment at Fisher Island.  I am almost 95 years old & I am an active member of Fisher Island in excess of 34 years.  Shebah has always been extremely helpful & caring to me.  It is shocking that this wonderful person was fired.

43.     Another member wrote:

> It is with extreme disappointment and displeasure in the management decision to terminate one of our most appreciated and talented employees.  I recognize that you will hide behind a veil of legal impediments not allowing you to speak.

44.     And Ms. Nydick, *the wife of Club Board member Mr. Nydick*, wrote a two-page email pleading for the Club to reconsider its actions in terminating Carfagna.  She wrote that Carfagna "is one of the best fitness instructors on Fisher Island."  She then listed 10 detailed reasons for her support of Carfagna, including, among others, Carfagna's care and assistance to a blind member of the Club.  She concluded her email by imploring the Club to re-instate Carfagna.

45.     A number of other members sent letters to the Club supporting Carfagna, criticizing the Club's conduct, and imploring the Club to reconsider its termination of Carfagna.

46.     The Club refused them all.

### Causes of Action

### Count I
### (Violation of 42 U.S.C. § 2000e, *et seq.* -- Wrongful Termination on the Basis of Race)

47.     Carfagna realleges paragraphs 1 through 46 as if fully set forth herein.

48.     Carfagna, a black woman, is a member of a protected class on the basis of her race.

49.     Carfagna was qualified to perform the job in question.

50.     The Club intended to, and did, discriminate against Carfagna on the basis of her race as alleged herein.

51.     As alleged herein, the Club engaged in discriminatory adverse actions and treated Carfagna disparately from how it treated the Club's white trainers.

52.     Carfagna was an employee of the Club within the meaning of Title VII.  *See* 42 U.S.C. §2000e(f).

53.     The Club is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

54.     The Club's intentional discrimination concerned Carfagna's employment status with the Club.

55.     The Club would not have engaged in the conduct complained of herein, but for Carfagna's race.  Or, at the very least, Carfagna's race was a motivating factor in the conduct complained of.

56.     As a direct and proximate result of the Club's unlawful discriminatory conduct in violation of Title VII, Carfagna has suffered and continues to suffer monetary damages, including, but not limited to, loss of past and future income, loss of goodwill in the health, wellness and anti-aging communities, and the undermining of her reputation.

57.     As a direct and proximate result of the Club's unlawful discriminatory conduct in violation of Title VII, Carfagna has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

58.     The Club's unlawful discriminatory conduct was pursued by the Club, its employees, and its senior management with malice or reckless indifference to Carfagna's federally protected rights.  The Club, its employees, and its senior management knew that its discriminatory practices were in violation of federal law.  Thus, Carfagna is entitled to punitive damages.

59.     Carfagna has retained the undersigned counsel to prosecute her claims.

WHEREFORE, Carfagna demands judgment against the Club for damages in an amount to be determined at trial, including compensatory damages, punitive damages, pre-judgment interest, costs and her reasonable attorneys' fees, and such further relief as the Court deems just and proper.

**Count II**
**(Violation of 42 U.S.C. § 2000e, *et seq.* -- Hostile Work Environment on the Basis of Race)**

60.     Carfagna realleges paragraphs 1 through 46 as if fully set forth herein.

61.     Carfagna, a black woman, is a member of a protected class on the basis of her race.

62.     Carfagna was an employee of the Club within the meaning of Title VII.  *See* 42 U.S.C. §2000e(f).

63.     The Club is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

64.     Carfagna was subjected to unwelcome racial harassment.  Such harassment was based on Carfagna's race.  The Club would not have engaged in the conduct complained of herein, but for Carfagna's race.  Or, at the very least, Carfagna's race was a motivating factor in the conduct complained of.

65.     Such harassment was severe or pervasive enough to alter the terms and conditions of Carfagna's employment and create a discriminatorily abusive working environment.

66.     The Club is responsible for the environment under a theory of either vicarious or direct liability.

67.     As a direct and proximate result of the Club's unlawful discriminatory conduct in violation of Title VII, Carfagna has suffered and continues to suffer monetary damages, including, but not limited to, loss of past and future income, loss of goodwill in the health, wellness and anti-aging communities, and the undermining of her reputation.

68.     As a direct and proximate result of the Club's unlawful discriminatory conduct in violation of Title VII, Carfagna has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

69.     The Club's unlawful discriminatory conduct was pursued by the Club, its employees, and its senior management with malice or reckless indifference to Carfagna's federally protected rights.  The Club, its employees, and its senior management knew that its

discriminatory practices were in violation of federal law.  Thus, Carfagna is entitled to punitive damages.

70.     Carfagna has retained the undersigned counsel to prosecute her claims.

WHEREFORE, Carfagna demands judgment against the Club for damages in an amount to be determined at trial, including compensatory damages, punitive damages, pre-judgment interest, costs and her reasonable attorneys' fees, and such further relief as the Court deems just and proper.

**Count III**
**(Violation of 42 U.S.C. § 2000e, *et seq*. -- Retaliation Against Protected Activity)**

71.     Carfagna realleges paragraphs 1 through 46 as if fully set forth herein.

72.     Carfagna was an employee of the Club within the meaning of Title VII.  *See* 42 U.S.C. §2000e(f).

73.     The Club is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

74.     Carfagna was qualified to perform the job in question.

75.     When Carfagna took measures to oppose the Club's discriminatory activities against her by informing the Club's management, the Club refused to address and rectify the discriminatory action Carfagna complained of, and instead terminated her employment.

76.     Carfagna's complaints about the Club's discriminatory treatment of her constituted protected activity.

77.     Carfagna opposed, and complained about, the above-described discriminatory activity based on the good-faith, reasonable belief that the practices violated Title VII.

78.     The Club would not have engaged in the conduct complained of herein, but for Carfagna's protected activity.

17

79.     As a direct and proximate result of the Club's unlawful retaliatory conduct in violation of Title VII, Carfagna has suffered and continues to suffer monetary damages, including, but not limited to, loss of past and future income, loss of goodwill in the health, wellness and anti-aging communities, and the undermining of her reputation.

80.     As a direct and proximate result of the Clubs' unlawful retaliatory conduct in violation of Title VII, Carfagna has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

81.     The Club's unlawful retaliatory conduct was pursued by the Club, its employees, and its senior management with malice or reckless indifference to Carfagna's federally protected rights.  The Club, its employees, and its senior management knew that its retaliatory practices were in violation of federal law.  Thus, Carfagna is entitled to punitive damages.

82.     Carfagna has retained the undersigned to prosecute her claims.

WHEREFORE, Carfagna demands judgment against the Club for damages in an amount to be determined at trial, including compensatory damages, punitive damages, pre-judgment interest, costs and her reasonable attorneys' fees, and such further relief as the Court deems just and proper.

### Count IV
### (Violation of 29 U.S.C. § 621, *et seq*. -- Age Discrimination)

83.     Carfagna realleges paragraphs 1 through 46 as if fully set forth herein.

84.     Carfagna is an employee within the meaning of the ADEA.  *See* 29 U.S.C. §630(f).

85.     The Club is an employer within the meaning of the ADEA.  *See* 29 U.S.C. §630(b).

18

86.     Carfagna was qualified to perform the job in question.

87.     Carfagna was a member of a protected class at the time of her discharge.

88.     Carfagna was either replaced by someone outside of her protected class, replaced by someone younger, or otherwise discharged because of age.

89.     The Club intentionally discriminated against Carfagna because of her age in violation of the ADEA by discharging her under circumstances in which younger employees would not have been discharged, and in fact were not discharged.  The Club would not have engaged in the conduct complained of herein, but for Carfagna's age.

90.     As a direct and proximate result of the Club's unlawful retaliatory conduct in violation of the ADEA, Carfagna has suffered and continues to suffer monetary damages, including, but not limited to, loss of past and future income, loss of goodwill in the health, wellness and anti-aging communities, and the undermining of her reputation.

91.     As a direct and proximate result of the Clubs' unlawful retaliatory conduct in violation of the ADEA, Carfagna has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

92.     The Club's unlawful discriminatory conduct constitutes a willful violation of the ADEA.  The Club either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA, entitling Carfagna to an award of liquidated damages under the ADEA.

93.     Carfagna has retained the undersigned to prosecute her claims.

WHEREFORE, Carfagna demands judgment against the Club for damages in an amount to be determined at trial, including compensatory damages, punitive damages, pre-judgment

interest, costs and her reasonable attorneys' fees, and such further relief as the Court deems just and proper.

**Count V**
**(Violation of Fla. Stat. § 760.01, *et seq*. -- Wrongful Termination on the Basis of Race)**

94.    Carfagna realleges paragraphs 1 through 46 as if fully set forth herein.

95.    Carfagna, a black woman, is a member of a protected class on the basis of her race.

96.    The Club is an employer within the meaning of the FCRA.  *See*. Fl. Stat. Ann. § 760.02(7).

97.    Carfagna was qualified to perform the job in question.

98.    The Club intended to, and did, discriminate against Carfagna on the basis of her race as alleged herein.

99.    As alleged herein, the Club engaged in discriminatory adverse actions and treated Carfagna disparately from how it treated the Club's white trainers.  The Club would not have engaged in the conduct complained of herein, but for Carfagna's race.

100.    The Club's intentional discrimination concerned Carfagna's employment status with the Club.

101.    The Club would not have engaged in the conduct complained of herein, but for Carfagna's race.

102.    As a direct and proximate result of the Club's unlawful discriminatory conduct in violation of the FCRA, Carfagna has suffered and continues to suffer monetary damages, including, but not limited to, loss of past and future income, loss of goodwill in the health, wellness and anti-aging communities, and the undermining of her reputation.

103.     As a direct and proximate result of the Club's unlawful discriminatory conduct in violation of the FCRA, Carfagna has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

104.     Carfagna is entitled to punitive damages.

105.     Carfagna has retained the undersigned counsel to prosecute her claims.

WHEREFORE, Carfagna demands judgment against the Club for damages in an amount to be determined at trial, including compensatory damages, punitive damages, pre-judgment interest, costs and her reasonable attorneys' fees, and such further relief as the Court deems just and proper.

### Count VI
### (Violation of Fl. Stat. 760.01, *et seq.* -- Hostile Work Environment on the Basis of Race)

106.     Carfagna realleges paragraphs 1 through 46 as if fully set forth herein.

107.     Carfagna, a black woman, is a member of a protected class on the basis of her race.

108.     The Club is an employer within the meaning of the FCRA.  *See*. Fl. Stat. Ann. § 760.02(7).

109.     Carfagna was subjected to unwelcome racial harassment.

110.     Such harassment was based on Carfagna's race.  The Club would not have engaged in the conduct complained of herein, but for Carfagna's race.

111.     Such harassment was severe or pervasive enough to alter the terms and conditions of Carfagna's employment and create a discriminatorily abusive working environment.

112.     The Club is responsible for the environment under a theory of either vicarious or direct liability.

113.     As a direct and proximate result of the Club's unlawful discriminatory conduct in violation of the FCRA, Carfagna has suffered and continues to suffer monetary damages, including, but not limited to, loss of past and future income, loss of goodwill in the health, wellness and anti-aging communities, and the undermining of her reputation.

114.     As a direct and proximate result of the Club's unlawful discriminatory conduct in violation of the FCRA, Carfagna has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

115.     Carfagna is entitled to punitive damages.

116.     Carfagna has retained the undersigned counsel to prosecute her claims.

WHEREFORE, Carfagna demands judgment against the Club for damages in an amount to be determined at trial, including compensatory damages, punitive damages, pre-judgment interest, costs and her reasonable attorneys' fees, and such further relief as the Court deems just and proper.

### Count VII
### (Violation of Fl. St. 760.01, *et seq*. -- Retaliation Against Protected Activity)

117.     Carfagna realleges paragraphs 1 through 46 as if fully set forth herein.

118.     When Carfagna took measures to oppose the Club's discriminatory activities by informing the Club's management, the Club refused to address and rectify the discriminatory action Carfagna complained of, and instead terminated her employment.

119.     The Club is an employer within the meaning of the FCRA.  *See*. Fl. Stat. Ann. § 760.02(7).

120.     Carfagna was qualified to perform the job in question.

121.     Carfagna's complaints about the Club's discriminatory treatment constituted protected activity.

122.     Carfagna opposed, and complained about, the above-described discriminatory activity based on the good-faith, reasonable belief that the practices violated the FCRA.  This belief was in subjective good faith and it was objectively reasonable.

123.     The Club would not have engaged in the conduct complained of herein, but for Carfagna's protected activity.

124.     As a direct and proximate result of the Club's unlawful retaliatory conduct, Carfagna has suffered and continues to suffer monetary damages, including, but not limited to, loss of past and future income, loss of goodwill in the health, wellness and anti-aging communities, and the undermining of her reputation.

125.     As a direct and proximate result of the Clubs' unlawful retaliatory conduct, Carfagna has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

126.     Carfagna is entitled to punitive damages.

127.     Carfagna has retained the undersigned to prosecute her claims.

WHEREFORE, Carfagna demands judgment against the Club for damages in an amount to be determined at trial, including compensatory damages, punitive damages, pre-judgment interest, costs and her reasonable attorneys' fees, and such further relief as the Court deems just and proper.

### Count VIII
### (Violation of Fl. St. § 760.01, *et seq*. -- Age Discrimination)

128.     Carfagna realleges paragraphs 1 through 46 as if fully set forth herein.

129.     The Club is an employer within the meaning of the FCRA.  *See*. Fl. Stat. Ann. § 760.02(7).

130.     Carfagna was qualified to perform the job in question.

131.     Carfagna was a member of a protected class at the time of her discharge.

132.     Carfagna was either replaced by someone outside of her protected class, replaced by someone younger, or otherwise discharged because of age.

133.     The Club intentionally discriminated against Carfagna because of her age in violation of the FCRA by discharging her under circumstances in which younger employees would not have been discharged and in fact were not discharged.  The Club would not have engaged in the conduct complained of herein, but for Carfagna's age.

134.     As a direct and proximate result of the Club's unlawful retaliatory conduct in violation of the FCRA, Carfagna has suffered and continues to suffer monetary damages, including, but not limited to, loss of past and future income, loss of goodwill in the health, wellness and anti-aging communities, and the undermining of her reputation.

135.     As a direct and proximate result of the Clubs' unlawful retaliatory conduct in violation of the FCRA, Carfagna has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

136.     Carfagna is entitled to punitive damages.

137.     Carfagna has retained the undersigned to prosecute her claims.

WHEREFORE, Carfagna demands judgment against the Club for damages in an amount to be determined at trial, including compensatory damages, punitive damages, pre-judgment interest,

costs and her reasonable attorneys' fees, and such further relief as the Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Carfagna demands a trial by jury on all issues so triable.

Dated:   December 14, 2025

Respectfully submitted,

MINSKER LAW PLLC


*/s/ Jonathan E. Minsker*
Jonathan E. Minsker
Florida Bar No. 38120
1100 Biscayne Blvd, Ste. 3701
Miami, Florida  33132
Telephone:  (786) 988-1020
jminsker@minskerlaw.com

*Attorney for Plaintiff Shebah T. Carfagna*